**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

**DOUGLAS DEJONG,**                                  **CASE NO.**

    **Plaintiff,**

**v.**

**TRANSTEX LLC,**

    **Defendant.**

_____/

## COMPLAINT

Plaintiff, DOUGLAS DEJONG, hereby sues Defendant, TRANSTEX LLC, and alleges:

## JURISDICTION

1.    This is an action brought under the Age Discrimination in Employment Act, 29 U.S.C. §621, and as amended, and the Florida Civil Rights Act, Chapter 760, Florida Statutes, as amended   Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights claim jurisdiction).

2.    This is an action involving claims which are, individually, in excess of Seventy- Five Thousand Dollars.

**THE PARTIES**

3.      At all times pertinent hereto, Plaintiff, DOUGLAS DEJONG, has been a resident of the State of Florida and was employed by Defendant. Plaintiff is a member of a protected class due to his age.

4.      At all times pertinent hereto, and upon information and belief, Defendant, TRANSTEX LLC, is a foreign, for-profit corporation that does business in, among other places, the state of Florida. Plaintiff specifically worked for Defendant out of his home office in Florida. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's employer as it relates to these claims.

**CONDITIONS PRECEDENT**

5.      Plaintiff has timely satisfied all conditions precedent to bringing this action, if any.

**STATEMENT OF THE ULTIMATE FACTS**

6.      Plaintiff, 69 years old, began his employment with Defendant on or about April 4, 2016, and held the position of Director of Sales until his wrongful termination on December 17, 2025.

7.      Plaintiff was a loyal and dedicated employee who worked for Defendant for nearly a decade and consistently demonstrated strong sales performance.

2

8.     Plaintiff even received the Director of Sales of the Year award in both August 2019 and August 2024.

9.     Despite his stellar work performance during his employment with Defendant, Plaintiff has been subjected to disparate treatment, different terms and conditions of employment, and was held to a different standard because of his age.

10.     The disparate treatment and retaliation came at the hands of, specifically, but not limited to, Senior Vice President, Sales, Todd McGuire, approximately in his fifties.

11.     Notably, in or around 2022, McGuire verbally informed Plaintiff that he earned the Director of Sales of the Year award again; however, he asked Plaintiff if he would allow Director of Sales of Canada John Slade, approximately 34 years old at the time, to receive the award instead, to "make him feel good." Plaintiff agreed to this, stating that he is a team player and has seen some improvement in Slade's work performance.

12.     In late July 2023, McGuire asked Plaintiff about his plans for retirement, to which Plaintiff responded that he had no set timeline. During the same conversation, McGuire stated that he wanted to transition Plaintiff's position to a younger employee, Slade, despite that individual being less qualified and having significantly lower sales performance. McGuire claimed that the reason for this was simply so that Slade could transition into working in the United States (U.S.) while

remaining based in Canada. McGuire informed Plaintiff that he would send him a Transition Process document to sign.

13. At the conclusion of the conversation, McGuire stated that Plaintiff should not interpret the transition as pressure to retire and that Plaintiff remained in control of how long he wished to continue working.

14. The next day, on or around August 1, 2023, Plaintiff was emailed the first Transition Process document, which outlined a plan to gradually remove his sales territory on a state-by-state basis toward an eventual full transition, and he was instructed to sign the document by the end of that week. Plaintiff expressed his disagreement with the terms; however, he signed the document out of fear of retaliation.

15. In or around January or February 2025, Plaintiff came across a LinkedIn advertisement for a job listing for Slade's current position with Defendant as Director of Sales of Canada. This indicated that Slade was set to leave his position, which conflicted with the original plan described to Plaintiff by McGuire.

16. For the subsequent months, Plaintiff was required to introduce Slade to most of Plaintiff's clients and to bring Slade along on work trips and meetings.

17. On or about August 5, 2025, McGuire informed Plaintiff during a Zoom meeting, with Human Resources (HR) Director Nancy Abrahamian present, that

Plaintiff would lose all his sales territory effective December 31, 2025, would retain only two accounts, and would be assigned a new job title, Director of Key Accounts.

18.    This new title would limit Plaintiff's sales accounts to only two, a majorly significant decrease from Plaintiff's previous role.

19.    This constituted the second Transition Process document, created by McGuire, which Plaintiff was instructed to return within one week. McGuire claimed that its purpose was to establish a succession plan whereby Slade would eventually assume part of Plaintiff's sales territory.

20.    Further, McGuire claimed that Slade would continue to operate as Director of Sales of Canada despite moving to Florida and taking over part of Plaintiff's sales territory.

21.    Notably, McGuire informed Plaintiff during this meeting that Plaintiff's work with Amazon thus far was "great" and "tremendous."

22.    Plaintiff again expressed his disagreement with the outlined transition. However, McGuire and Abrahamian proceeded to verbally pressure Plaintiff by describing the transition as positive, claiming that it would improve Plaintiff's quality of employment.

23.    On or about December 10, 2025, Plaintiff was further informed that his younger counterpart, Slade, had obtained a green card, listed his home for sale, and planned to relocate to Florida around January 1, 2026.

24.    On December 17, 2025, Plaintiff was wrongfully terminated by McGuire, with Abrahamian present, purportedly based on alleged performance concerns, including complaints attributed to an Amazon Zoom meeting, from which Plaintiff was excluded, and alleged delays in submitting expense reports.

25.    Plaintiff denies these allegations and contends that they were pretextual and used to justify his termination, which occurred after Defendant had begun transitioning Plaintiff's territory and replacing him with a younger employee.

26.    In fact, Plaintiff actually brought in Amazon as a client with Defendant, and regularly maintained a positive relationship with their team, which McGuire even praised during the August 5, 2025, meeting.

27.    Plaintiff expressed surprise and questioned McGuire and Abrahamian about their reasons for taking this action. They responded by repeating that "Amazon just doesn't want to talk to you anymore."

28.    Plaintiff further disputes this spurious claim. By way of example, Plaintiff remains acquainted with former Amazon representative Trina Wilson, approximately in her mid-forties, who has informed Plaintiff that she enjoyed working with him.

29.    Furthermore, following Plaintiff's termination, an Amazon representative, Tony Thompson, approximately in his early forties, contacted Plaintiff via phone call for assistance with work involving Defendant. Plaintiff

informed Thompson that he was no longer employed by Defendant, and Thompson expressed surprise, stating that they had maintained a strong working relationship and asked what the reason was for his termination.

30. Moreover, Plaintiff is now employed by another company, where he works with many of the same Amazon representatives. His communications and performance with these representatives remain satisfactory, contradicting Defendant's claim that he had a poor working relationship with Amazon.

31. Additionally, during Plaintiff's termination meeting, Abrahamian advised that Plaintiff would be rightfully paid his commission earnings from the first 16 days of December, approximately just below $7,000. However, in further discrimination against Plaintiff based on his age, he has yet to receive this payment.

32. Plaintiff is unaware of any other, younger employees who have ended their employment with Defendant and not received their full pay.

33. Since Plaintiff's termination, Defendant replaced Plaintiff with Slade, who is notably a much younger, less qualified worker.

34. Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

## COUNT I
## <u>AGE DISCRIMINATION</u>

35.    Paragraphs 1 through 34 are realleged and incorporated herein by reference.

36.    This is an action against Defendant for discrimination based upon age brought under the ADEA and Florida Civil Rights Act.

37.    Plaintiff has been the victim of discrimination on the basis of his age in that he was treated differently than similarly situated younger employees of Defendant and has been subject to hostility and poor treatment on the basis, at least in part, of his age.

38.    Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff. Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same. Defendant's known allowance and ratification of these actions and inactions actions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

39.    In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of an age-based nature and in violation of the laws set forth herein.

40.    The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.

41.    Defendant's conduct and omissions constitute intentional discrimination and unlawful employment practices based upon age in violation of the laws asserted hereunder.

42.    As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive relief and to punitive damages.

43.    More specifically, and as to Plaintiff's damages under the ADEA, Plaintiff seeks back pay, front pay, and attorney's fees and costs, as well as injunctive relief, including reinstatement.  Under the Florida Civil Rights Act, Chapter 760, Plaintiff seeks back pay, front pay, compensatory damages or pain-and-suffering damages, reinstatement, punitive damages, attorney's fees, costs, and every other kind of damage authorized under that law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a)     that process issue and this Court take jurisdiction over this case;

(b)     that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)     enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein, to the extent authorized under each lawsuit hereunder but not more than or in excess of that allowed by each law;

(d)     enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e)     enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f)     award Plaintiff interest where appropriate; and

(g)     grant such other further relief as being just and proper under the

circumstances, including but not limited to reinstatement.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this13th day of March 2026.

Respectfully submitted,


/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32303
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
Marie@mattoxlaw.com
Secondary emails:
marlene@mattoxlaw.com


ATTORNEYS FOR PLAINTIFF